No. 12,698.

Wm. E. Hawks vs. Wm. A. Bright.

## Syllabus.

Defendant, vendor of stock, bound himself personally to pay ten *per cent. per annum* for ten years on the amount of the stock transferred, if the company, issuing the stock, did not pay it in dividends.

Defendant reserved the right, as vendor, of purchasing back the stock (at the price settled upon when the sale was made) at the end of ten years.

The company having stopped operations and never having declared any dividends, plaintiff sued to compel defendant to pay the instalments or dividends for ten years, on the ground that by going out of business the company caused defendant's obligation to mature. The court holds that one instalment is due as claimed, but that the other instalments are not exigible, the time stipulated not having elapsed; that the defendant was the principal obligor under the terms of the contract of sale and the time granted him to pay the ten *per cent.* was not recalled by the failure of the company, which was not, in matter of the sale, treated as principal obligor. The principal obligor continues to enjoy the time during the term agreed upon.

The evidence does not sustain the charge that the defendant wrecked the company by which the stock was issued and that he thereby concluded himself from claiming the fines stipulated for payment.

Defendant's liability grows out of the poor management of the company; against that plaintiff sought to protect himself by requiring defendant's obligation.

On this branch of the case defendant's liability is fixed by requiring him to pay the loss of dividends. He did not attempt to wreck or damage the company, with the view of injury to plaintiff. The court did not find that the terms of the contract had been forfeited.

The absolute want of all organization of the company, owing the shares, and defendant's representations in that respect, are not issues before the court, under the pleadings.

With reference to the claim on reconventional demand for damages to defendant, growing out of allegations to his detriment in the case here, to sustain his plea, it devolved upon defendant to prove malice and the want of probable cause. In this attempt he did not succeed.

ON appeal from the Fifth Judicial District Court for the parish of Ouachita. *Stubbs,* judge *ad hoc.*

*Hudson, Potts & Bernstein,* for Plaintiff, Appellant.

*E. T. Lamkin,* for Defendant, Appellee.

Argued and submitted May 30, 1898.
Opinion handed down June 13, 1898.
Rehearing refused January 9, 1899.

The opinion of the court was delivered by

BREAUX, J.   Plaintiff and appellant sued on a contract of guaranty. On appeal he urged that an error was committed to his prejudice in not having pronounced judgment in his favor for the whole of the amount of his claim, instead of one-tenth of the amount of his claim.

The defendant and appellee controverted plaintiff's demand and in his answer here asked for an amendment of the judgment by rejecting the whole of plaintiff's demand, and prayed for judgment on his reconventional demand for the sum of fifteen thousand dollars.

From the averments of plaintiff's petition and the evidence, we gather that in March, 1893, defendant, alleged president of the Kight Lumber Company, made application to plaintiff and urged him to buy a part of the stock of the corporation and in order to effect the sale, assured him that the stock was worth a larger amount than that at which it was offered for sale.   He gave as a reason for desiring to sell, the purpose to enlarge the plant and extend its business.

Plaintiff declined to buy unless the defendant consented to guarantee an annual dividend of, at least, ten per cent.   In order to effect the sale, the defendant gave a written guarantee to plaintiff that the certificates transferred "shall receive an annual dividend of 10 per cent for ten years, with the understanding that myself or the Kight Lumber Company, Limited, have the option of recalling the stock after five years and paying one hundred and twenty-five dollars for same."

The foregoing is an extract from the contract of guaranty.

Plaintiff it appears, prior to buying, wrote to the defendant, raising objection to the language or terms of the guarantee which had been forwarded to him for his acceptance.   Defendant immediately mailed another guarantee to plaintiff, and in a letter of advice, expressed the hope that the last guarantee would meet with his approval.   The following is an excerpt from the letter: "I think, however, you are mistaken in your conclusions, as my guarantee is simply an individual guarantee, and does not affect your claims in the Kight Lumber Company for dividends.   My understanding of the transacation was and is.

the same as yours, i. e., your shares are to receive the same dividends that any other shares of the Kight Lumber Company receive, but in event the company should not declare an annual dividend of at least ten per cent I am to become personally responsible to you for that amount, making your shares net you 10 per cent *per annum,* no matter what may happen, and for this guarantee I have the option of buying said shares at the expiration of five years at one hundred and twenty-five dollars per share. If this is not plain enough write out just what you desire and send to me for my signature."

Thereupon plaintiff bought stock to the amount of ten thousand dollars, of the Kight Lumber Company, paying therefor, the sum of eight thousand dollars.

No dividend was paid on the shares. In May, 1894, plaintiff alleging a breach of the contract of guarantee; failure to declare dividends, owing to the alleged mismanagement of the defendant as president of the company; wrongs and even frauds committed by him in the administration of its affairs, brought suit for the total amount secured by the contract of guaranty.

Plaintiff in support of his demand for the immediate payment of the ten instalments of dividends, as having matured because of defendant's acts, represented that a short time after he became the owner of the certificate of shares in the Kight Lumber Company, Limited; all the property had been seized under writs of attachment and other legal process, issued aginst it, by creditors of the corporation and had been sold by the sheriff. That there remained a large amount due after the sale of all its property; it was absolutely insolvent.

Defendant sought to meet plaintiff's contention by averring, in substance, that the Kight Lumber Company was amply able to meet its obligation and to earn dividends at the date of the transfer of its certificates to plaintiff, but that a short time after the transfer, the plaintiff who was president of the Monroe Water Works and Light Company wrongfully and maliciously, as president of that company sued the Kight Lumber Company upon a false and fictitious demand, and had an attachment to issue under which all the property of the company was seized; that the unwarranted appeal to the courts aroused the other creditors, who also sued out writs of attachment and brought on the ruin of the corporation; that the plaintiff cares for his interest exclusively by buying all the property sold at sheriff's sale

for a limited amount, and that since the purchase he lets the property for a comparatively large annual rental.

He also alleged, that he had not been placed *in mora.*

In a supplemental answer he reconvened for damages in a large sum and alleged that the charges in plaintiff's petition in the case before us for decision of fraudulently scheming to defraud the stockholders and direct the earning of the company were maliciously and libelously made for the purpose of bringing him into disrepute in the community in which he resided.

The District Court pronounced judgment in favor of the plaintiff for one thousand dollars and interest, being the first year's dividend guaranteed in the contract, and non-suited plaintiff's demand for the remainder of dividends, as being premature. The judgment rejected defendant's reconventional demand for damages.

From the judgment the plaintiff prosecutes this appeal.

The utter insolvency of the Kight Lumber Company is not disputed.

But defendant contends that plaintiff, president of the Monroe Water Works and Light Company, and one of its principal stockholders, brought about the insolvency of the Kight Lumber Company by filing a suit and causing an attachment to issue, and the seizure under its illegal attachment of all its property; that this prompted the suing out of other writs of attachment which proved disastrous to the corporation.

The defendant failed in his attempt to trace the cause of the collapse of the Kight Lumber Company to plaintiff. The suit of which he complains was not brought by him, nor was the attachment made at his instance. It was the act of the corporation in his absence. He did not take the required oath or furnish the bond for the attachment. Another person acted in his absence. Whatever may have been his responsibility as president of the Monroe Water Works and Light Company, plaintiff in the suit and attachment, it does not appear that he acted for the purpose of causing the destruction of the Kight Lumber Company, but, on the contrary, it was shown that he had naught to do with instituting the suit.

The amount involved in this suit was only two hundred and seventy-eight twenty-nine-one-hundredth dollars, and it is shown that the plaintiff company was amply able to respond for damages, if any had

been committed. The amount of damages growing out of an illegal attachment cannot very well be settled here.

Moreover: The suit complained of was brought on the 11th of February, at the same time with suits of several other creditors. The next day other suits were brought and other attachments issued. Of the number there was a suit brought by the defendant personally and an attachment sued out by him against the Kight Lumber Company, of which he was the president. It must be stated in justice to the defendant, that he was absent at the time. But the suit, none the less, was prosecuted to a judgment and the attachment was recognized in the judgment.

Defendant having sued his own company the day after the suit brought by plaintiff against it, is hardly in a position to plead the great degree of malice by which he contends plaintiff, Hawks, was actuated in bringing the suit.

We have found no difficulty in arriving at the conclusion, in view of the terms and conditions of defendant's obligation of guaranty that the amount of one thousand dollars allowed in the judgment appealed from was due.

With reference to the remaining nine-tenths of plaintiff's claim, the question arises: Did the failure of the Kight Lumber Company, Limited, have the effect of precipitating the maturity of defendant's obligations as guarantor under the contract before stated?

It is contended in behalf of plaintiff that the company is utterly unable to earn anything to pay any dividends; that it is without stockholders, officers or property and exists only in name.

It is also averred by the plaintiff that the suit was not brought on a contract with the Kight Lumber Company, but with defendant; that he guaranteed that plaintiff should receive, at least, 10 per cent dividends upon his stock; that it being no longer possible for the company to earn or pay dividends, defendant's liability is fixed and exigible. The plaintiff as a witness confirms the averment by the statement that he would not have purchased the stock without the personal guarantee of the defendant.

Conceding all that is claimed relative to the insolvency and ruin of the Kight Lumber Company, in view of the conditions of the contract, the plaintiff is not entitled to the cash payment of the whole amount due.

In the first place the defendant reserved the right to buy after five

years, the shares he transferred to plaintiff. It was left to his option, to buy or not to buy. It may be that they are, at present, worthless, and that they never will have any value, yet, for purpose of his own, the defendant may redeem them in accordance with the right reserved.

As relates to five years, after which the defendant may buy the shares, it would be, in our view, inequitable to require payment of dividends in advance on shares of which to avoid further payment of dividends he may become owner at will. He stipulated a personal right which is part of the contract.

In the second place, by the conditions of the contract, the defendant became the principal obligor.

In the third place, the defendant's obligation being personal and absolute, the insolvency of the corporation even if judicially declared, would not, as against the defendant, cause his obligation to mature.

The defendant was a vendor. He assumed to make good that which the vendee considered, or must have considered, at least, partial consideration. This is not the case of a security, but an independent obligation of one who is called upon to respond, because the property he transferred has not yielded the revenue he bound himself it would yield. The corporation, for reasons alleged, is no longer a going corporation. It appears that the corporation never can pay plaintiff the dividends defendant guaranteed he should receive. It remains that the defendant was considered and treated as an independent obligor. The question arises, if the accessory obligation, for any reason, fails to carry out the intention of the parties, as shown by the terms of the contract, will the failure of performance carry with it a rescission of the instalments of the principal obligation?

In the case here the corporation has not been judicially declared an insolvent. In addition, the defendant has not been placed *in mora*. No offer has been made to dissolve the contract, or to return the shares. We take it finally that the benefit of the delay was personal and independent of the accessory obligation, and that before the principal can be affected, the exact condition of the accessory should be ascertained and fixed.

The corresponding article of the Code Napoleon (488) to ours (2054) has been interpreted by the French Courts. Le Boise vs. Hautot. Dalloz Jurisprudence Generele (1873) p. 206. In the French Commentaries reference is made to the principle here involved. We cite

Hawks vs. Bright.

.them in support of our own jurisprudence upon the subject. Larombiere, Vol. 2, Art. 23, p. 499; Laurent, Vol 17, p. 226, 227.

With reference to the charge that the company had not been legally ..organized at the date that the defendant, as its president, issued certificates of shares; that issue was not raised by the pleadings. On the contrary, plaintiff averred in his petition that the corporation had been organized under the laws of the State of Louisiana, an averment by which, in this appeal, plaintiff is bound.

With reference to the charge against the defendant, that the corporation was insolvent to his knowledge, at the date he transferred the certificate of shares to plaintiff, and that he, by his own acts, ruined the corporation and rendered valueless the shares he had transferred, we do not think the defendant was guilty of the bad faith and treacherous conduct the accusation implies.

We take it that plaintiff and defendant knew very little of the value of the plant and of its stock, and that, as is frequently the case, too much credence was given to inflated written statements of the company's business, prepared by employes not sufficiently careful in making estimates of values.

Relative to the active management of the corporation, it does not appear that the president was positively at fault. He, as is sometimes the case with enterprises, was positively blameworthy for not giving needful attention to the interests of the company. This does not offer a ground of action in the present suit for specific performance, growing out of the inability of the company to declare dividends and from the fact that it is not in business.

We pass to the next question involved, and brought up by re-convention for damages growing out of the allegations personal to the defendant, contained in plaintiff's petition in this case. The averments complained of, made with the view of sustaining plaintiff's action, have not had the damaging effect, it is urged they had. Counsel, in their zeal and industry, allege sometimes more than is necessary to sustain their suits. Unless there is evidence of downright malice and intention to injure, such allegations are taken *cum grano salis*. Here, the plaintiff was absent. He did not know of the allegations, when they were made, nor even at the trial. The principles laid down in Gardemal vs. McWilliams, 43rd Ann. 435, and Monroe vs. Lumber Co., 50th Ann., apply here.

It is ordered, adjudged and decreed that the judgment appealed from, is affirmed.