No. 12,865.

STATE OF LOUISIANA VS. THELESMAR MARCEAUX ET AL.

The overruling by the District Court of a challenge for cause of a juror tendered to the accused for acceptance does not furnish ground for reversal of verdict and sentence, when the accused has not, at the time when the jury has been completed, exhausted his peremptory challenges.

A witness, Benoit, was permitted by the court, over defendant's objection, to testify that he was engaged by the accused to assist him in driving cattle, and started with him under such employment; that while so engaged, the latter made a proposition to him that they should steal a drove; that on witness declaring he could not do so, accused replied that that was nothing; that they could buy a few head and pick up some along the road; that he (the accused) had been carrying on that business for the last six years; that he had once cleared four thousand dollars in four months in that way; that witness at once left the service of the accused, and both returned to witness' house, where the two parted; that on parting with witness, accused said, he would go and meet one Bell, and they would gather a drove. Defendant's ground of objection was that the conversation in question was not made at the time of the taking of the cattle for which he stood charged with larceny, and for which he was then on trial, and it did not form part of the *res gestæ* having been made prior to the date of the alleged offence, and that said satements attributed to him were not admissions on his part of guilt of the offence with which he was charged. The court admitted the testimony, not to show a distinct crime, but to show intent, knowledge and system, and to show the admissions and statements made by accused as to the character of the business in which he was engaged. The court declared that the evidence showed a great similarity in the way the cattle alleged to have been stolen were taken, with that detailed in Benoit's testimony.

The ruling of the District Court was correct.

The testimony detailed a proposition made by the accused to the witness, then in his employ driving cattle, to join him in stealing cattle in a certain way, which proposition was followed very shortly afterward by accused being charged with having stolen cattle in his possession taken in the way which the proposition suggested they should be taken. The evidence was pertinent, relevant and admissible to show intent, and to give character to the nature of the defendant's possession of the cattle held by him. It showed an admitted premeditated plan to steal cattle generally, followed almost immediately by his having stolen cattle in his possession.

The sheriff who arrested the accused testified, that the accused when arrested "looked like a man who had been up all night as if he had no sleep; his leggings were all wet and muddy."

Defendant objected to the answer, but the court permitted it to stand. The court

72

stated the answer was elicited by the defence in the cross-examination of the sheriff, and was not in reply to a question of the District Attorney,

That it was pertinent for the State to show as a corroborative link in the State's evidence the condition and general appearance of the accused on that morning. Defendant objected that " the witness was submitting his opinion, not facts to the jury." The general rule is, that witnesses must state facts and not opinion, but the rule is subject to many exceptions, and under the facts of this particular case the answer was properly permitted to stand.

A District Attorney is not justified in his argument to the jury in calling attention to the fact that the accused had not testified in his own behalf. His doing so is reversible error, which is not cured by the court's telling the jury " that the right of an accused to testify was a privilege accorded to him which he had a right to exercise or not, as he saw fit; and that if he testified, he subjected himself to all the rules which applied to other witnesses, and that his failure not to testify if he choose not to do so, was not to be construed for or against him;" and by the District Attorney's stating to the jury, that the instruction given them by the court was the law.

ON APPEAL from the Seventeenth Judicial District Court for the Parish of Vermilion. *De Baillon, J.*

*M. J. Cunningham*, Attorney General, and *Minos T. Gordy*, District Attorney, for Plaintiff, Appellee.

*Edwards & Green, J. A. Chargois, L. L. Bourges, A. & Chas. Fontelieu (Sigur, Milling & Sanders*, of Counsel), for Defendant, Appellant.

Argued and submitted June 18, 1898.
Opinion handed down June 25, 1898.
Rehearing refused December 5, 1898.

The opinion of the court was delivered by

NICHOLLS, C. J. Defendant, indicted for larceny, was convicted and sentenced to hard labor in the penitentiary for two years. He urges, in reversal of the verdict and judgment, that having been indicted prior to the going into operation of the Constitution of 1898 he was, over his protest, tried and convicted by a petit jury of five·

His counsel contends that Art. 116 of the Constitution of 1898 required legislative action to put it into operation; that it was not self-operative.

This identical question has just been decided by us adversely to

appellants' position.  See State vs. Caldwell *et al.*, 50 An., recently decided.  He urges that the court illegally sustained the State's challenge for cause of the juror Senac, who, on his *voir dire*, had stated that his father and the mother of the accused were first cousins.  It is contended the relationship between the parties did not fall within the prohibited degrees.

The court, in its *addendum* to appellant's bill on this point, stated that Act No. 99 of 1896 did not fix the degree of relationship that the law provides; that the judges of the District Court shall have discretion to decide upon the competency of jurors in particular cases when, from physical infirmity, or from relationship, or other causes, the person may be, in the opinion of the judge, incompetent to sit upon the trial of the particular cause.  That defendant had then eight peremptory challenges left, having challenged only four jurors peremptorily.  That the right of peremptory challenging was a right to reject and not to select.  Citing State vs. Shields, 33 An. 1410; State vs. Farrer, 35 An. 315; State vs. Creech, 38 An. 480; State vs. Durr, 39 An. 752; State vs. Carries, 39 An. 931; State vs. Lewis, 41 An. 590; State vs. Covington, 45 An. 979; State vs. Nash & Barnett, 45 An. 1143; State vs. Porter, 45 An. 661; State vs. Tibbs, 48 An. 1281.

It is not claimed that at a later stage of the proceedings defendant exhausted his peremptory challenges.

The authorities cited sustain the position taken by the State, that appellant's complaint touching the sustaining of the challenge to this juror is not well grounded.

Appellant further complained that a witness (Benoit) was illegally permitted to testify to certain conversations between himself and the accused prior to the alleged commission of the offence on the 20th of December, 1897.  Benoit's testimony was taken outside of the hearing of the jury, and subsequently he testified as a witness. The testimony was substantially "that in November or December, 1897, accused stayed all night at witness' house; that the next morning he told witness that he had come there to gather a drove; that he had before this proposed to witness that he should buy a drove, and on his saying he did not have the money, he said he would buy it and they could send it to New Orleans.  The witness, without stating that accused then asked him to accompany him on his trip to buy or gather cattle, and that he had consented to do so,

and that they started upon their trip for that purpose, leaves it clear that he intended to convey that such was the fact, for he went on at once to say that "when they (accused and himself) got on the other side of Bayou Plaquemine there was a fine forest about a mile wide where they found a drove of cattle, and they stopped to examine the quality of the cattle; that accused then and there made a proposition to him to steal a drove. That on witness telling him he could not do it, he said that that was nothing; that they could buy a few head and pick up some along the road as they went. That he said he had been carrying on that business for the last six years. On his making this statement witness proposed that they should turn and go back to his house; that they did so, getting there at night; that upon arriving they unsaddled their horses; that they took supper together, and after supper they parted, accused saying 'he would go and meet Joe Bell, and they would gather a drove.' That accused told him that in four months he had cleared one thousand dollars in that way."

Defendant objected to the giving of this testimony on the ground that "it was not made at the time of the taking of the property for which he was charged and for which he was on trial—for the further reason that it did not form part of the *res gestæ*, having been made prior to the date of the alleged offence for which defendant was not on trial, and that the said statements attributed to defendant were not admission of guilt on his part of the offence charged and for which he was on trial."

The court assigned the following reasons for overruling the objections: "The defendant was seen driving a herd of cattle early in the morning of December 14, 1897, between Perry's Bridge and Abbeville. It turned out that the cattle belonged to five different persons. After the discovery of the larceny accused left the parish and remained absent until arrested by the sheriff, near Obelin, in Calcasion parish. The evidence was admitted, not to show a distinct crime, but to show intent, knowledge and system, and to show the admissions and statements made by the accused as to the character of the business in which he was engaged. It was admitted for no other purpose. The evidence showed a great similarity in the way the cattle alleged to have been stolen were taken and as detailed in the testimony of Benoit."

Accused did not object to particular specified portions of the tes-

timony, but to the whole. We think the testimony was properly introduced for the purpose stated. It detailed a proposition made to the witness by the accused to join him in stealing cattle in a certain way, which was followed very shortly afterward by accused being charged with having stolen cattle in his possession, taken in the way it was suggested they should be taken. It might well happen that a person driving a herd of cattle belonging to himself on the highway, should by accident, take into the drove cattle belonging to other persons, and the question of intent would be the all-controlling factor in the case touching guilty possession. We think that a statement by accused of proposed, future action on his part to steal cattle—to "buy some" and "gather in others," was pertinent, relevant and admissible testimony to show intent and to characterize the subsequent possession of the cattle which we assume he had been shown to have had in his possession not belonging to himself and "gathered in" in that way. The object was not to show that these particular cattle were stolen, but to show a premeditated plan thereafter to steal them generally.

Appellant complains that the sheriff of the parish being on the stand, the District Attorney asked him: "What was the appearance of the defendant, Marceaux, that morning? Could he look you in the face?" and that, although defendant objected thereto, on the ground that the answer would be the opinion of the witness, the question was permitted to be asked by the court, the answer being that "he looked like he had not slept any the night before; it was plain to see that he was guilty."

The court says "the sheriff did not make the answer attributed to him in the bill to the question objected to; that he answered the question as follows: 'He looked like a man who had been up all night; as if he had had no sleep; his leggins were all wet and muddy.' The court says the cattle alleged to have been stolen were seen in the possession of the accused early that morning, between Perry's bridge and Abbeville, and, after putting the cattle in a wooded pasture, the accused came to Abbeville, where he was met by the sheriff, and the question was directed to the condition or general appearance of the accused at that time. It was pertinent for the State to show, as a corroborative link in the State's evidence, the condition and general appearance of the accused on that morning. The answer objected to in the bill was elicited by the defence in the

cross-examination of the sheriff, and the answer was not in reply to the question propounded by the District Attorney."

The correctness of the court's statement " that it was [in the case at bar] pertinent for the State to show, as a corroborative link in the State's evidence, the condition and general appearance of the accused on that morning " is not called in question. We have, therefore, to assume that the question was relevant to the issue, and to ascertain (such being the case) whether the particular objection raised that the State was illegally seeking through it to have submitted to the jury, not facts, but a mere opinion of the witness, was well grounded.

It needs no special citation of authorities to support the general proposition that witnesses must state facts and not opinions. A number of decisions of our own court on this subject can be found in Hennen's Digest, *verbo* Evidence, subdivision XVI, page 559. The rule, however, is subject to very numerous recognized exceptions. Jones on the Law of Evidence, Vol. 2, Sec. 362, refers to the subject in this manner: " We shall first call attention to a class of exceptions where the opinions of ordinary witnesses are received. It often happens that it is impossible for a witness to detail all the pertinent facts in such a manner as to enable the jury to form a conclusion without the opinion of the witness. Indeed, the witness may not be able to separate the facts and indications from which he has formed a conclusion from the conclusion itself. From many of the illustrations given below it will appear from the necessity of the case the opinions of ordinary witnesses must often be received. For example, the opinions of those not experts may be received as to the disposition or temper of animals, as to matters of color, weight, quantity, light, darkness, the state of the weather and similar facts, the state of feeling existing between different individuals, the appearance of individuals, the age of persons, the reputation of parties or witnesses, when under other rules of evidence such reputation becomes material. * * * So ordinary witnesses have been allowed to express opinions as to whether another person seemed to be suffering pain, or whether he seemed nervous or sad, or in pain or good health, or whether a person's mind seemed to be clear or had failed or whether he needed medical attendance, or in what manner a person had acted, or whether a child was fully developed. Although some of the illustrations just given approached very closely to the

border line, it is not to be inferred that the opinion of ordinary witnesses are competent as to those subjects which require special study and skill—for example, to distinguish between different forms of disease, or to state the causes and consequence of cases.  A common illustration of the same principle is the admission of the opinion of witnesses as to the state of intoxication or sobriety of others. The witness is allowed to describe the words, acts and gestures, or he may omit such particulars and state his conclusions.''

A question of this character was disposed of, with many citations of authorities and full assignment of reasons, by the Supreme Court of Alabama in Thornton vs. State, 21 Southern Reporter, 356.

In that case the court held that where the sheriff had testified that he met the defendant after the homicide he could state that '' defendant looked frightened when he saw him.'' If the fact of the '' defendant's appearing frightened '' was a pertinent and relevant qustion in that case it was obviously out of the power of the witness to have conveyed to the jury any circumstance which would have enabled them to have determined themselves whether, in point of fact, he looked frightened or not.  The only way in which that fact could be proved was by the conclusion reached by the sheriff, conveyed to them under his oath.  We are of the opinion that the testimony was properly admitted.

Appellant charges and complains that the District Attorney in his closing argument to the jury said to them: '' Why did not Marceaux [defendant] go on the stand and testify on his own behalf if he was not guilty; he had the right to do so.  He did not do it because he knew better,'' etc.  That counsel interrupted him, objecting to such statement on the ground that he had no right to make such a statement to the jury, as it tended to prejudice it against the accused, and that under the law it could not be inferred that accused was guilty because he did not testify in his own behalf; that the objection was overruled and the District Attorney was permitted to proceed with his argument.  The court says it made no such ruling as was charged; that when interrupted the District Attorney had not finished his statement.  In his opening (not his closing argument) the District Attorney made the following statement: Why did not Telesmar Marceaux go on the stand and testify in his own behalf; he had the right to do so; he did— and at this point counsel for defendant interrupted the District Attorney and

objected to the statement. The court informed counsel for defend-
ant that it would instruct the jury fully on this point, and then and
there told the jury that the right of an accused to testify was a priv-
ilege accorded to him, and which he had a right to exercise or not
as he saw fit. If he testified he subjected himself to all the rules
which applied to other witnesses, but that his failure to testify, if
he chose not to do so, was not to be construed for or against him.
That the District Attorney did not persist in his argument on this
point and did not finish the sentence, but told the jury the instruc-
tion given them by the court was the law. The court stated that in
ts charges to the jury it instructed them fully upon this point in the
following language: "The court instructs the jury that while the
law provides that a person charged with a crime may testify in his
own behalf, yet he is under no obligation to do so, and the law ex-
pressly declares that his failure to testify shall not be construed for
or against him."

The complaint made by the accused that the District Attorney
improperly commented upon his failure to testify is based upon the
provisions of Act No. 29 of 1886, which, while granting a party accused
the privilege of testifying in his own behalf, provides that his failure
to testify should not be construed for or against him."

He contends that the object, purpose and spirit of the law is to
prohibit the District Attorney from calling the attention of the jury
to the subject, as otherwise a statute intended for the benefit of the
accused would be converted into a positive injury to him; that prior
to the statute an accused person not having the power to testify, his
silence was a protection to him, but that now it would forcedly pre-
judice the jury against him.

The State urges that the District Attorney merely started to hold
accused responsible for not establishing a certain fact that fell under
the principle, that when a fact is particularly within the knowledge
of a party who fails to establish that fact, he is responsible whether
his ability to establish it depended on his own or any other evidence
under his control; that when defendant's counsel objected the Dis-
trict Attorney desisted—the judge instructed the jury that failure to
take the stand was not to be construed against him; that the District
Attorney endorsed the soundness of that instruction and withdrew the
remark. That as shown by the statement of the judge this occurred
in the opening argument and not in the closing argument as claimed.

by counsel for appellant. That the action in the matter was in accord with that endorsed in State vs. Chevis, 48 An. 575, and appellant has no cause for complaint. Reference is made to State vs. Johnson & Butler, 48 An. 87; State vs. Anderson & Blackstone, 45 An. 654; State vs. Mack, 45 An. 1157, and State vs. Duck, 35 An. 764.

The facts in State vs. Chevis, 48 An. 577, are not similar to those of the case at bar. The District Attorney in the Chevis case made no allusion to the failure of the defendant to take the stand as a witness; he simply argued to the jury that the burden of proof, as to a certain point was upon defendant, and it being a matter peculiarly within his knowledge, and the defence not having met the burden, the fact involved was to be taken adversely to defendant. In the present case the District Attorney, according to the bill of exceptions (the recitals of which are not denied) when he was stopped from saying more had already said to the jury: "Why did not Marceaux go on the stand and testify in his own behalf—he had the right to do so—he did—" The failure of the defendant to go upon the stand to testify (not his failure to place other parties on the stand, or his failure to introduce evidence to establish a certain fact) was the subject of direct comment, and the jury's attention was specially called to the fact that no obstacle stood in the way, "as he had the right to do so." There is no doubt of the existence of the fact that the jury's attention was called by the District Attorney to appellant's not having taken the stand in his own behalf.

If the remarks were illegal, they certainly had been made when the District Attorney was stopped from further comment by objection from defendant's counsel. Two questions arise—*first*, whether the remarks were illegal and wrong; and, *second*, whether if illegal and wrong, the subsequent action of the court in its charge to the jury and the admissions of the District Attorney to that body, cured the illegality, and did away with the wrong and prejudice which may have resulted from the same. In Reddick vs. The State, 21 Southern Reporter, 490, the Supreme Court of Mississippi held, that under the article of the Code of the State forbidding the prosecuting attorney to comment on the failure of accused to testify in his own behalf, such comment thereon was ground for reversal of a conviction, though the court directed the jury to disregard it. It said: "It is true, that immediately on the prisoner's counsel excepting to the language of the counsel for the State, the court instructed the jury.

that the District Attorney was prohibited by law from commenting on the defendant's failure to take the stand in his own behalf, and that the jury must not consider any such comment. But this action of the court could not and did not undo the wrong already done. The statute absolutely forbids any comment on the failure of the accused to testify, and it is the right of every person charged with the crime to insist that he enjoy this statutory immunity from criticism by hostile counsel, and the disregard of this plain statute, and the decision of this court upon it, must reverse the judgment appealed from." The court cited Yarbrough vs. State, 70 Miss. 593, 12 Southern Reporter, 551, as authority to the same effect.

The only difference between the two Mississippi cases from that before us is in the language of the statutes of the two States. The Mississippi law declares that "the failure of the accused in any case to testify shall not operate to his prejudice or be commented on by counsel," while the Louisiana statute is to the effect that the "failure (of the accused) to testify should not be construed for or against him."

In the one case the prohibition is direct and positive; in the other it is inferential and consequential, but strong and clear.

In our opinion, the terms of the law convey with them a mandate from the State to her officers charged with the enforcement of the laws (a direct mandate to the judge and an implied one to the District Attorney), that what was intended by the lawmaker as a privilege should not be permitted to be made to be turned into an instrument of attack upon those for whose benefit, and not for whose injury, the law was enacted.

We are in accord with the Supreme Court of Mississippi when it says that the wrong once done can not be undone by mere admissions of the District Attorney or attempted correction by the court.

Once granted that a simple retraction suffices to replace matters as they were, and the law would become practically a dead letter; the thing prohibited could be accomplished by easy methods without possibility of rectification through the courts. "Comment was made, unfriendly comment, too; and prejudice may have been operated against the accused, and so he has not the trial he was entitled to under the law." (See on this subject Wilson vs. U. S. 149, U. S. 60; Hunt vs. State, 28 Texas, 149 [12 S. W. 737]; Johnson vs. State, Texas Crim. App. [20 S. W. 980]; Braxell vs. State, Texas Crim.

App. [24 S. W. 414]; Richardson vs. State, Tex. Crim. App. (26 S. W. 723); Dawson vs. State [Iowa], 55 N. W. 97.)

For the reasons assigned, the verdict of the jury and the judgment of the court thereon are set aside and the cause remanded for further proceedings according to law.

JUSTICES BREAUX and MILLER dissent.

Rehearing refused December 5, 1898.