For the reasons assigned, the judgment appealed from is affirmed, with all costs.

ST. PAUL, J., takes no part.

On Application for Rehearing and Motion to Correct Decree.

PER CURIAM.

The decree is corrected so as to allow legal interest from judicial demand as prayed for.

Rehearing refused.

144 So. 587

## STATE v. RICHARDSON.

### No. 31930.

Oct. 31, 1932.

Dupont & Dupont, of Plaquemine, for appellant.

Gaston L. Porterie, Atty. Gen., James O'Connor, Asst. Atty. Gen., and Hewitt Bouanchaud, Dist. Atty., of Baton Rouge (James O'Niell, Sp. Asst. to Atty. Gen., of counsel), for the State.

O'NIELL, C. J.

The appellant stands convicted of manslaughter and sentenced to imprisonment in the penitentiary for a term not less than five or more than seven and a half years. He killed a man named Hewes.

The defense was that the fatal shot was fired in self-defense, after Hewes had shot at the defendant with a rifle. The only testimony relating to the question, whether the killing was done feloniously or in self-defense, was the testimony of a constable named Eugene Schustz, and that of a man named Adolph Landry. They were witnesses for the state. The defendant did not offer any evidence in the case. Schustz testified that he went to the residence of the defendant and arrested him immediately after the shooting, and that the defendant then voluntarily made a statement to the effect that he had shot Hewes in self-defense, after Hewes had shot at him with a rifle; and that the defendant said also that Hewes had come to his, defendant's, home, armed with the rifle, accused the defendant of having stolen some goods from him, and said that he had come to guard the house until the arrival of the sheriff.

During the cross-examination of Schustz, the defendant's attorney undertook to prove by the witness that the general reputation of Hewes in the community was that of a dangerous character. The district attorney objected to the introduction of such evidence, on the ground that there was no proof of a hostile demonstration or an overt act on the part of Hewes. The judge sustained the objection, and the defendant's attorney reserved a bill of exception. The objection was founded upon article 482 of the Code of Criminal Procedure, viz.:

"In the absence of proof of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against accused is not admissible."

When the evidence was offered and the objection made, the testimony of Schustz was the only evidence before the court as to Hewes' having made a hostile demonstration or committed an overt act. The testimony had been introduced by the state, and it stood uncontradicted, that Hewes had made the hostile demonstration, had committed the overt act, by firing upon the defendant with a rifle, before the defendant fired upon Hewes.

The testimony of Landry, which was introduced afterwards by the state, did not directly contradict the testimony which Schustz had given, to the effect that Hewes had made the hostile demonstration, or committed the

overt act. Landry's testimony consisted only of the repeating of a dying declaration made by Hewes, at his home, soon after the shooting. The dying declaration, as repeated by Landry, shows that Hewes was very doubtful about the details of the fatal difficulty. He said that he did not aim to shoot Jesse Richardson; that he might have had the gun cocked; that he did not remember whether he had it up to his shoulder, but that he must have pulled the trigger in falling. Here is how Landry repeated the dying declaration: "I didn't go over the bayou to hurt Jesse. I simply went over there to guard the house until the sheriff came. I didn't aim to shoot Jesse. I might have had the gun cocked. I don't remember whether I had it to my shoulder or not, but in falling I must have pulled the trigger. Jesse stole several pairs of ladies' stockings and several pairs of men's socks," etc. While Hewes was enumerating the articles which he said Jesse Richardson had stolen, his voice weakened so that he could not articulate. He died ten or fifteen minutes afterwards.

■ Evidence of the dangerous character of Hewes, by proof of his general reputation, was offered for the purpose of corroborating the statement of the defendant that Hewes had provoked the fatal difficulty by making a hostile demonstration, or committing an overt act. The evidence of· the dangerous character of Hewes was, of course, not relevant to any other issue, or admissible for any other purpose but to corroborate, as far as it tended to corroborate, the testimony to the effect that Hewes had provoked the fatal difficulty. Wharton's Criminal Evidence (10th Ed.) Vol. I, p. 246, No. 63a.

The writer of this opinion adheres to the dissenting opinion which he has handed down in many cases, particularly in State v. Boudreaux, 137 La. 227, 68 So. 422, State v. Harvey,. 159 La. 674, 106 So. 28, and State v. Dreher, 166 La. 924, 118 So. 85, that the doctrine of article 482 of the Code of Criminal Procedure, and of the jurisprudence on which the article is founded, is violative of the Constitution of Louisiana (article 19, § 9), in that it undertakes to make the judge, instead of the jury, decide the question of fact on which depends the question of guilt or innocence, and is violative. of the Fourteenth Amendment of the Constitution of the United States, in that it undertakes to deprive the defendant of his life or liberty without due process of law, by depriving him of the benefit of his evidence until the judge has decided in his favor the very question to which alone the evidence is relevant. The writer of this opinion believes that, in a prosecution for murder or manslaughter, where the defendant admits the killing but contends that he did it in self-defense, evidence of the dangerous character of the person killed, or of previous threats made by him to take the life of the defendant, is admissible whenever there is any evidence that the person killed was the aggressor in the fatal difficulty, and when, therefore, the question which the jury has to decide is whether the defendant or the person killed was the aggressor in the fatal difficulty.

■■ The majority of the members of the court, however, adhere to the rule stated in many decisions of this court, and restated in the Code of Criminal Procedure, that, in a prosecution for murder or manslaughter, evidence of the dangerous character of the per-

son killed, or of his having threatened to take the life of the defendant, is not admissible until the defendant has proved to the satisfaction of the judge that the person killed first made a hostile demonstration, or committed an overt act. This case, therefore, must be decided according to that rule; as a part of which rule the evidence on the question of the hostile demonstration, or overt act, on which evidence the district judge based his ruling, is subject to review by this court.

■ Having considered the evidence on the subject, consisting only of the testimony of the state's witnesses, Schustz and Landry, we have concluded that there was sufficient evidence of the hostile demonstration or overt act on the part of Hewes to warrant the introduction of evidence on the question of his dangerous character by proof of his general reputation in the community in which he lived.

The district judge, perhaps, based his ruling only upon the so-called confession made by the defendant to the constable, Schustz, because, when the evidence of the dangerous character of Hewes was tendered and objected to, the dying declaration of Hewes had not been offered in evidence. Our ruling, however, would be the same, whether we should consider only the confession made by the defendant to Schustz, or should consider also the dying declaration made by Hewes to Landry; because, as we have said, the dying declaration was not a direct denial of the hostile demonstration or overt act. And if we consider only the confession made by the defendant to Schustz, and introduced in evidence by the state, we must not give effect only to the defendant's confession that he shot Hewes, but must give effect to the defendant's whole statement—that he shot Hewes in self-defense after Hewes had shot at him.

It appears from the per curiam, annexed to the defendant's bill of exception, that the judge erred, first, in thinking that the exculpatory part of the defendant's confession was contradicted by the dying declaration of Hewes, and, second, in refusing to give effect to the exculpatory part of the defendant's so-called confession. The judge says in the per curiam:

"As I understand the law, before evidence of bad or dangerous character on the part of the deceased, in a murder or manslaughter case, can be offered in evidence, it must be shown to the satisfaction of the court, by a reasonably clear preponderance of evidence, that the deceased had committed an overt act, or made a hostile demonstration towards the accused.

"When this bill was reserved, the witness, Schustz (who is a constable), had testified on direct examination that he arrested the accused after the shooting, and that the accused told witness that he had shot the deceased but that the deceased had shot first. The exculpatory statement, that the deceased had shot first, was afterwards contradicted by the dying declaration of the deceased, as subsequently testified to by Adolph Landry. The testimony of Landry, on file in the record, was taken out of the presence and hearing of the jury, to enable the court to determine whether the alleged dying declaration was made at a time when the accused was laboring under a sense of impending dissolution,

but Landry's subsequent testimony before the jury was substantially the same.

"The exculpatory statement, that the deceased had shot first, was, of course, properly admitted, since exculpatory as well as inculpatory parts of a confession or incriminating statement must be admitted if the confession is admitted at all. In other words, the confession must be admitted as a whole or not at all.

"No objection whatever was made to the admission of the entire confession; but such an exculpatory statement, made out of court, by an accused, when he was not under oath, and not subject to cross-examination, can, in my opinion, never be regarded as proof of an overt act, that would form a basis for the introduction of evidence of the dangerous character of the deceased."

In the last paragraph which we have quoted it appears that the judge finally departed from the rule which he had announced, that the so-called confession of the defendant, which the state had introduced in evidence, should be taken as a whole, and not merely as a confession that the defendant had shot Hewes, as if without any justification or excuse. It is wrong to say that the exculpatory or favorable part of a so-called confession made by the defendant in a criminal prosecution, and introduced in evidence and relied upon by the state, "can never be regarded as proof of an overt act, that would form a basis for the introduction of evidence of the dangerous character of the deceased." We must bear in mind that self-defense is not a special plea in a prosecution for murder or manslaughter, but is included in the general issue tendered by the plea of not guilty; and that the burden of proof is not on the defendant to prove that he acted in self-defense, but is on the state to prove, beyond a reasonable doubt, that the killing was done feloniously, and therefore not in self-defense. On that proposition the jurisprudence is uniform. State v. Ardoin, 128 La. 14, 54 So. 407, Ann. Cas. 1912C, 45; State v. Varnado, 128 La. 883, 55 So. 562; State v. Herring, 131 La. 972, 60 So. 634; State v. Johnson, 149 La. 927, 90 So. 257, 258; State v. Scarborough, 152 La. 677, 94 So. 204; State v. Vial, 153 La. 883, 96 So. 796; State v. Linden, 154 La. 66, 97 So. 299; State v. Conda, 156 La. 679, 101 So. 19, 20. In the latter case, the court quoted from previous cases thus:

"Self-defense is not a special plea. It is involved in the general issue tendered by the plea of not guilty. The burden is not upon the accused to prove that he acted in self-defense. It is upon the state to prove beyond a reasonable doubt that the killing was done feloniously, and therefore not in self-defense."

Our conclusion is that the defendant should have been allowed to prove, if he could prove, the dangerous character of the man whom he killed.

The second bill of exception has reference to a remark made by the district attorney in his argument to the jury, to the effect that the defendant had not availed himself of his right to testify in the case. The district attorney said that there was no conflict in the testimony, except that at a certain point the statements attributed to the defendant, by the witness Schustz, conflicted with the statements attributed to Hewes, in

his dying declaration, as related by the witness, Landry. Then the district attorney said: "From that point on there is a conflict in the testimony to this extent;—we cannot say the testimony of Richardson, or the testimony of Mr. Hewes, because neither one of them testified."

Hewes, of course, could not have testified in the case, because he died a few hours after he was shot. There was no good reason for the district attorney to remind the jury that the dead man had not testified in the case, and still less reason for calling attention to the fact that the defendant had not testified in the case. In State v. Robinson, 112 La. 939, 36 So. 811, it was said:

"When the district attorney has commented before the jury on the failure of the accused to testify in his own behalf, the verdict will be set aside, even though the judge instructed the jury to dismiss the comment from their minds, and not to permit themselves to be influenced by it, or by the failure of the accused to testify."

To the same effect see State v. Marceaux, 50 La. Ann. 1137, 24 So. 611, and State v. Sinigal, 138 La. 469, 70 So. 478. Our opinion, therefore, is that the second bill of exception is well founded. The district attorney cites the case of State v. Williams, 124 La. 673, 50 So. 648, in which the comment of the district attorney was, very much like the comment in this case; but in the Williams Case it was the attorney for the defendant who called attention to the fact, and insisted, that the defendant had not testified in the case.

The third bill of exception was reserved to the judge's refusal to give the jury a special charge requested by the defendant's attorneys. The substance of the charge requested was that, in dealing with a dying declaration, it should be observed that passions and prejudices, which in life may pervert the perceptive faculties, do not always lose their power on the deathbed, and hence that it cannot be said always that the consciousness of the near approach of death is equivalent to an oath administered on the witness stand. The statement was taken literally from Wharton's Criminal Evidence (10th Ed.) Vol. I, p. 541, No. 276; but the author was not stating an abstract principle of law, or rule of evidence, but was merely giving a dissertation on the reason why a dying declaration is admissible in evidence. The charge requested, being merely a discussion of the sufficiency or effect of the evidence referred to, was not required to be given by the district judge.

The fourth and last bill of exception was reserved to the overruling of a motion for a new trial, and is merely a repetition of the complaints made in the three other bills.

For the reasons given with reference to the first and second bill of exception, the verdict and sentence are set aside, and the case is ordered remanded to the district court for a new trial.

OVERTON and BRUNOT, JJ., dissent on bill No. 1, but concur in decree; the concurrence being based on bill No. 2.

ST. PAUL, J., takes no part.