OVEBTON, J.
 

 Defendants were charged with having maliciously, willfully, and feloniously aided, counseled, procured, and directed Curtis Glauson to set fire to, and burn, an outhouse belonging to T. F. Terral. They were tried, found guilty, and sentenced to the penitentiary for a period of not less than three, nor more than five, years.
 

 The bill styled “bill No. 1” was taken to the overruling of a motion for a new trial. This bill will be the last to be considered. The second bill relates to the overruling of an objection to evidence showing that the outhouse was burned on June 7, 1927, when the indictment alleged that it was burned on June 10th of that year. The bill also relates to the overruling of an objection to a question, propounded to T. F. Terral, seeking to ascertain if defendants knew when he would return from a certain town, unless the witness could say that Terral himself had notified defendants when he would return, and to the refusal of the court to instruct the witness not to answer the question, if the answer would be based upon hearsay. The bill is also reserved to the refusal of the court to strike the answer from the evidence, because it was not responsive. The answer was substantially that defendants did not expect the witness to return before late in the afternoon or possibly at night, because he had instructed Alma and Jewell, Alma, it may be said, being one of the defendants;- to go to the field near where the burning took -place in the afternoon.
 

 It was not necessary to prove that the offense was committed on the date named in the indictment. The slight variation of three days between the date alleged and that which the evidence tended to prove, which was one prior to the finding of the indictment, was wholly immaterial. State v. Wichers, 149 La. 643, 89 So. 883; State v. Agudo, 5 La. Ann. 185. As relates to the refusal of the court to instruct the witness not to answer, unless the witness himself had notified the defendants when he would return, or if the answer would be based on hearsay, it is sufficient to observe that the statement, purporting to indicate notice of the time of return, was made to one of the defendants, and was not based on hearsay. As relates to the refusal to strike from the evidence the answer of the
 
 *275
 
 witness, when given, it suffices , to observe that the instructions given by the witness to Alma might well have had, in connection with the other facts of the case, which do not appear, a tendency to show that the witness expected to be gone for the day, and hence cannot be said to be not responsive. No error appears in these rulings.
 

 From bill No. 3 it appears that the following question was propounded by the assistant counsel for the state to Johnnie Hill, a witness for the prosecution, to wit:
 

 “You have just stated that Alma Jackson stated to you at noon on the day the house was burned in the afternoon that something was going to happen on that place before night; what else, if anything, did Alma Jackson say to you there at that time, and before the fire?”
 

 This question was objected to on the ground that, if its purpose was to establish a confession, it had not been shown that the confession was voluntary; also upon the ground that proof of a conspiracy had ■ not been shown to exist between either of the defendants and the witness; and upon the ground of irrelevancy. The witness answered the question by saying that the accused, Alma Jackson, told him to continue ploughing where he was, and to meet him at Mrs. Terrain that afternoon at 3 o’clock; that the witness asked Johnson what he wanted with him; and that Jackson then told the witness that he had something to tell him for his own good. The witness then went on to say where he was ploughing, and where Jackson was ploughing; to mention a request on the part of a Mr. Henry to go see what Jackson wanted ; to state the reason given, which is unimportant, why he did not want to go then; that, while he was ploughing, he saw Ourtis Glauson, the boy who it is charged was procured to set the house afire, running; that he holloed at the boy, but that the boy kept on running; that he then went back to his plough; that in a few moments thereafter he heard a person holloing, and looked up and saw smoke; that he then went to the burning house; that, after the fire, Jackson told him that he was the closest one to the house; that all of them thought that he had burned it; and that not to tell anything, but that, if he had to, then to say that Ourtis Glauson burned it.
 

 The evidence brought out by the question objected to, as appears from the foregoing, is in no sense evidence of a confession. It is merely evidence of things that occurred shortly before, at 'the time of, and immediately after, the fire. The rules pertaining to the admissibility of confessions therefore have no pertinency. As to the objection concerning conspiracy between either defendant and the witness, there is. no law requiring the state to establish such a conspiracy to permit a witness to testify to what one or all of the defendants did, and it may be said that learned counsel do not even mention this particular objection in their brief. With reference to the objection as to irrelevancy, the evidence adduced was relevant.
 

 The fourth bill was reserved to a ruling of the court refusing, for the tjme being, to permit counsel for the defense to continue with the .cross-examination of the witness, Johnnie Hill. It appears that assistant counsel for the state was examining the witness concerning the voluntariness of a certain statement made to him by Alma Jackson. During the course of the examination the witness, who was a negro boy, was asked whether any mental or physical force was brought to bear on Jackson to .cause him to make the statement, and the witness answered that there was not. Counsel for the defense, after a question or two additional had been asked, then requested permission to cross-examine the witness to ascertain whether he knew what mental and physical meant. After ascertaining that the witness did not know the meaning of those words, and why he had .answered without knowing their meaning,
 
 *277
 
 counsel for the defense began cross-examining the witness about the treatment of boys bn Terral’s place, and concerning the treatment of the witness; and, after counsel had asked a number of questions along this line, counsel for the state objected to the continuation of the cross-examination, for the reason that the witness had been tendered to the defense, at its request, to enable it to ascertain whether the witness knew what physical and mental meant. The court ruled that the defense might ask additional questions as to the meaning of those words, if it desired to do so, but could not continue to pursue a general cross-examination of the witness. Counsel for the defense then insisted upon being permitted to cross-examine the witness in full, and propounded to him another question, which was objected to substantially upon the ground that the witness had not been tendered for general cross-examination, which objection was sustained. The ruling was correct. The witness had been tendered for cross-examination only for the purpose of ascertaining a specific fact. The examination in chief had not been completed, and the defendants had no right to cross-examine the witness generally, until the state had finished its examination in chief. It is immaterial that, when the question here presented arose, the witness had already been on the stand, and was then on it, because he had been recalled by the state.
 

 Bills of exception Nos. 5 and 6 were taken to the overruling of objections to a series of questions, propounded by the state to its own witness, Curtis Glauson, who, it is alleged in the bill of indictment, was the boy procured to set the house afire. The objections are based upon the ground that the questions were propounded for the purpose of contradicting and impeaching the witness, which the state should not be permitted to do, for the reason that the witness was the state’s witness. It appears that the witness had stated while on the stand that he did not know who burned the house. It also appears that the state pleaded surprise at the answer of the witness, after counsel for the defense had urged an objection, the surprise being based upon the ground that the state had placed the witness upon the stand, as its principal witness; that it had, through its counsel, discussed with this witness his testimony as late as that morning, and expected it to be the same as that given in the grand jury room, and discussed with counsel for the state that day. The court permitted the examination to continue, and a large number of questions were asked the witness touching whether or not he had made statements directly opposite to the statement just made by him, and touching statements made by the witness to several persons in connection with his part and that of the two accused in the crime charged. In the course of the examination a written statement was read to the witness, reciting that he had burned the house at the request of the accused, Henry Glauson, and that the accused, Alma Jackson, helped to plan the crime, and he was asked whether he had made such a statement. The witness, in the course of his examination, admitted that he made such a statement, but stated that it was not true, and denied that he or either of the defendants had anything to do with the burning of the house.
 

 The evidence abundantly satisfies us that the state was taken by surprise. In State v. Vickers, 47 Ea. Ann. 1574, 1578, 18 So. 639, 641, it was said, quoting from Greenleaf:
 

 “You may cross-examine your own witness if he testify contrary to what you had a right to expect as to what he had stated in regard to the matter on former occasions, either in court or otherwise, and thus refresh the memory of the witness and give him full opportunity to set the matter right if he will; and, at all events, to set yourself right before the jury. But you cannot do this for the mere purpose of discrediting the witness, nor can you be al-. lowed to prove the contradictory statements
 
 *279
 
 of the witness upon other 'occasions, but must be restricted to proving the facts otherwise by other evidence.”
 

 In State v. Corneille, 153 La. 929, 936, 96 So. 813, 815, it was said, that:
 

 “The rule undoubtedly is that ,one who, without warning, has been entrapped by a hostile witness may not only contradict his testimony, but may destroy it by impeachment.”
 

 See, also, State v. Bodoin, 153 La. 641, 96 So. 501.
 

 In the case at bar the avowed purpose of the state was to refresh the memory of the witness. There was no error in the ruling.
 

 Bill No. 7 was taken to certain remarks made by the district attorney in his argument to the jury. In these remarks he,said that the defense admitted in open court that Curtis Glauson had changed his evidence; that' Curtis Glauson admitted to the jury that he told T. P. Terrai, the grand jury, and assistant counsel for the state a different story; that, after Glauson had been summoned by the state, he forgot all that he had ever told counsel for the state until he was cross-examined under permission of the court; and that the manner in which the defense claimed that Terral treated boys on his place, and the fear that Curtis Glauson and others had of Terral, was completely disproved on cross-examination.
 

 It may be doubted whether any action was asked of the court concerning these remarks, though the bill substantially recites that the court gave no instructions to the jury concerning them. But, be that as it may, defendants have no cause to complain. The remarks were only comments on evidence before the jury.
 

 Bill No. 8 was taken to a remark, made by the assistant'counsel of the state in his argument to the jury, to the effect that the defense had no legal right under the sun to take the state’s witnesses out- and browbeat them. However uneálled for and .unfounded this remark may have been, counsel was only arguing his deductions from the evidence, due to the change made by Curtis Glauson in his evidence. The judge gave no instructions in the matter, and based his reasons for'not acting on substantially what we have said. We think that the remark does not call for a reversal of the verdict.
 

 Bill No. 9 was reserved to a remark, made by the assistant counsel for the state, concerning which the court gave no instructions and took no action, the remark being as follows:
 

 “I say again, gentlemen, that there hasn’t been a word from any witness of the defendants, that there has not been a word of denial in this matter.”
 

 The court, in its per curiam, says that the remark was leveled at the failure of defendants’ witnesses to deny a material'fact under discussion. The defense placed no witnesses on the stand, and the defendants did not avail themselves of the privilege of taking the witness stand in their own behalves. It is the contention of defendants that the state, by the foregoing remark, commented in contravention of law upon their failure to take the stand. It is well established that the state has no right to comment on the failure of the accused to take the stand. State v. Marceaux, 50 La. Ann. 1137, 24 So. 611; State v. Robinson, 112 La. 939, 36 So. 811. This reference, that is, to the failure of the accused to testify, need not be in express terms to constitute error, where it is made in language! which clearly shows the purpose and intention to be to refer to such failure and to bring that failure directly to the attention of the jury as an argument against the innocence of the accused. State v. Broughton, 158 La. 1045, 105 So. 59. However, the rule prohibiting such reference has never been extended so far as to prohibit the state in discussing the evidence, in its argument before the jury,' from mentioning the failure of the
 
 *281
 
 defense to offer evidence to show the nonexistence of any asserted fact or facts under discussion, whether this failure results from that of the defense to question such witnesses as it may have placed on the stand, regarding the existence of the asserted fact or facts, or from the failure of the defendant to testify or to place witnesses on the stand. The proper construction of Act 157 of 1916, governing such matters, does not justify such a restriction of the rights of the state. See State v. Robertson, 133 La. 806, 63 So. 363; State v. Jack, 139 La. 885, 72 So. 429; State v. Connor, 142 La. 631, 77 So. 482. The argument was not improper.
 

 Bill No. 11 relates to a remark said to have been made in argument by Judge Dig-by, assistant counsel for the state, in his argument to' the jury. The remark referred to is as follows:
 

 “If the jury do not convict in this case how is any white man’s property to he free from the torch of a dissatisfied negro tenant?”
 

 The judge in his per curiam says that he has no recollection of counsel making such a remark or of defendants excepting to it; that the court stenographer was present throughout the trial, making jiotes of objections; that these notes, which are in the record, do not disclose any such statement or bill reserved in reference thereto; and that he is sure no action of the court was invoked by counsel for defendants in reference to any such statement. The. notes of objections made and bills reserved disclose no reference, to any such statement.
 

 Pyetermitting all reference as to the uncertainty surrounding the making of the statement, the bill cannot 'be sustained, because it appears, as disclosed by the judge’s statement, that no action was asked of the court in reference to any such remark. In State v. Genna, 163 La. 701, 716, 112 So. 655, 660, we said, in reference to a bill taken to a remark made by counsel for the state in argument, that:
 

 “The bill presents nothing for consideration. In State v. Poole, 156 La. 434, 440, 100 So. 613, we said that a bill of exceptions which does not show that the trial judge was asked for a ruling and an exception taken to such ruling when made presents nothing for the consideration of an appellate court, citing 3 Corpus Juris, 894, 895, and State v. Judge, 12 La. Ann. 113.”
 

 Bill No. 10 was reserved to the refusal of the court to give the following special charge; to wit:
 

 “Where a witness for the state has denied any knowledge of the crime, and where the state is then permitted to ask the witness questions as to his prior statements, then such statements, made out of the presence of the defendants, are hearsay, and are to be given no weight as against the defendants, and are not to be considered by them in reaching a verdict.”
 

 The judge states that he refused to give this charge, because, as worded, it involves a comment on the facts, but instead charged the jury as follows:
 

 “Where the state is permitted to ask its witness questions as to his prior statements for the purpose of refreshing his memory and thereby eliciting the facts in the case inquired about, such testimony could not, and should not, be taken as substantive evidence against the defendants and serve as the basis for their verdict.”
 

 Counsel for the defense insist that' the judge gave no such charge, and point to the facts that a written charge was requested in this case, and that no charge, such as the judge says he gave, appears in writing in the record. However, notwithstanding these facts, we feel constrained to accept the positive statement of the judge that he did so charge the jury, although our acceptance of that statement may ■ leá’d to the conclusion that he did so orally upon refusing the written charge requested, or did so in writing, but failed to file the special charge given by him.
 

 While we are of the opinion that the special charge requested does not involve a comment on the facts,' htit 'purports' to present
 
 *283
 
 throughout a statement of law, still we think that the point intended to be covered by the special charge is sufficiently, if not also more correctly, given than in the charge requested. The charge requested is, in its closing words, a virtual instruction to the jury to disregard the statements for all purposes, including that of taking into consideration the surprise of the side, placing the witness on the stand, occasioned by the witness’ change of evidence.
 

 Bill No. 1 was taken to the overruling of a motion for a new trial. It is based upon the ground that the verdict is contrary to the law and the evidence, and also upon the grounds stated in the bills of exceptions which we have already considered. As relates to the ground that the verdict is contrary to the law and the evidence, this is a ground, as we have repeatedly held, which we cannot consider. The trial judge says that, in his opinion, the law and the evidence justified the verdict returned. It is the peculiar province of a trial judge to answer that question; that is to say, whether the law and the evidence did justify the verdict.
 

 For these reasons, the verdict and the sentence appealed from are affirmed.
 

 O’NIELL, O. J., dissents from the rulings on bills 10 and 11.