VIOSCA, Justice.
 

 Defendant was charged by indictment with the murder of Gus Gill on July 12, 1958 in the Parish of St. Tammany, Louisiana. He was found guilty by a jury and sentenced by the court to death. He has appealed to this Court relying upon thirty-one bills of exception for the reversal of his conviction and sentence.
 

 Bill of Exception No. 1 was reserved to the court’s refusal to order the state to elect under which section of LSA-R.S. 14:3o
 
 [1]
 
 defendant was charged
 
 [2]
 
 Defendant filed a motion for a bill of particulars in which he alleged : "That the bill of indictment charges your defendant with murder, without stating the section of the Article under which he is charged and your defendant believes that he is entitled to know and be apprized judicially by answer to this bill of particulars of the following; and that until such particulars be furnished, that he be not called upon to answer thereto.
 

 “(a) That the State should set forth and allege the section of the Article under which your defendant is charged.”
 

 
 *1101
 
 In answer to the motion for a bill of particulars the district attorney set forth: “That the defendant is being prosecuted for the crime of murder under both Subsection 1 and Subsection 2 of R.S. 14:30, in that the offense was committed while the defendant had the specific intent to kill or inflict great bodily harm, and under Subsection (2) in that during the course of the commission of the offense, the defendant was engaged in the perpetration of armed robbery.” Defendant contended that the answer was inadequate and that the state should elect under which subsection defendant was being prosecuted. The trial judge refused to order the state to elect and the defendant reserved a bill of exception to this ruling.
 

 The bill is without merit. Murder can be committed under Subsection (1) or under Subsection (2) of LSA-R.S. 14:-30 or under both subsections at the same time and the state cannot be ordered to elect when it charges both. State v. Rowan, 233 La. 284, 96 So.2d 569
 
 [3]
 

 Defendant filed a prayer for oyer in which he asked that he be furnished with any written statement or confession made by defendant and that any verbal statements which were made in addition to the written statement be reduced to writing and copies thereof furnished to defendant. The district attorney furnished a photostatic copy of the written statement and/or confession made by defendant and agreed to permit defendant to inspect the original, but he declined to reduce to writing any verbal statements or confessions. The trial judge granted the prayer for oyer of the written statement or confession but overruled the motion as to the oral statements, to which ruling defendant reserved Bill of Exception No. 2.
 

 In his per curiam the trial judge states that under the decision of this Court in State v. Dorsey, 207 La. 928, 22 So.2d 273 the defendant is entitled to inspect and copy his written confession but there is no law under which verbal statements made by a defendant before trial may be ordered reduced to writing and submitted to defendant. The trial judge is correct
 

 Our ruling in State v. Dorsey, supra, does not apply to oral confessions by the defendant. State v. Lea, 228 La. 724, 84 So.2d 169; State v. Martinez, 220 La. 899, 57 So.2d 888; State v. Simpson, 216 La. 212, 43 So.2d 585.
 

 Bill of Exception No. 3 was reserved to the ruling of the trial judge refusing defendant’s request to have the motion for the bill of particulars and the answer thereto read to the jury'and explained to them. Bill of Exception No. 4 was reserved to the refusal of the trial judge to order the district attorney to elect under
 
 *1103
 
 which subsection of LSA-R.S. 14:30 he was proceeding and to read that portion of the statute to the jury and explain its application to the indictment.
 

 The trial judge properly overruled both motions. As the trial judge correctly states in his per curiam to Bill of Exception No. 3 there is nothing in LSA-R. S. 15 :333 requiring that the motion for a bill of particulars and the answer thereto be read to the jury. The bill of particulars forms no part of the indictment and cannot add to or detract therefrom. State v. Dabbs, 228 La. 960, 84 So.2d 601. The prosecution is on the indictment and not on the bill of particulars. State v. Bienvenu, 207 La. 859, 22 So.2d 196.
 

 Bill of Exception No. 4 is a reiteration of Bill of Exception No. 1 and no further discussion is necessary.
 

 Bill of Exception No. 5 was taken when the witness, Mayor Prieto, was permitted over objection to answer the question: “Mr. Prieto, do you, of your own knowledge, know what the orders were and the procedure followed by officers on duty at night, in making arrests?” The objection made was that the witness should not be permitted to answer unless he knew of his own knowledge. As the question and the answer of the witness were limited to what he knew of his own knowledge, there is no merit to the objection. Bill No. 5 was also reserved to the ruling of the court permitting Bill Parker, who was engaged in police work in the Town of Mandeville to testify on the same subject. Parker testified that he worked with Gus Gill, Jake Galloway, and Mayor Prieto in police work and that there was a common procedure in making arrests at night, for one officer to get another officer to accompany him. Counsel for defendant objected to all testimony with respect to this arrangement.
 

 The per curiam of the trial judge states that it was the state’s theory that on the night of the murder Gill and Galloway were both killed by defendant as they were attempting to arrest him. The judge states: “* * * I see no reason why the procedure employed in the Town for two officers to be present when making an arrest could possibly prejudice the defendant. Accordingly, I overruled the objection to the testimony of the two witnesses which forms the basis of Bill of Exception No. 5.” There is no merit to this bill.
 

 Bills of Exception Nos. 6,
 
 7,
 
 8, 9 and 10 may be considered together as they all relate to the admissibility of the written and oral confessions, and in many respects overlap. The objections to the admissibility of the confessions are based on the following grounds : (1) That the written confession given by the defendant to the officers in Baton Rouge and the verbal statement made by the defendant in New Orleans
 
 *1105
 
 were not free and voluntary; (2) that the defendant was not capable of knowing what he was doing when he made the written confession; and (3) that the oral confession was not reduced to writing and was not repeated verbatim by the witnesses.
 

 In his per curiam the trial judge very ably answers the first obj ection as follows:
 

 “The record reflects that the written confession was the first that was given by this defendant. The two officers of the Baton Rouge Police Force, namely, Lt. Ballard and Det. Hewitt, talked to him in Baton Rouge Hospital shortly after his arrest and in addition to their testimony that they used no force, coercion, threats, intimidation or inducements, there was the testimony of the attending physician, Dr. Byrd, who was present the whole time, and said he heard no -threats or intimidation, as well as the testimony of Dr. Williams, the Coroner, who was likewise present and heard no threats, coercion or promises. All these witnesses testified the defendant appeared to be perfectly normal, and even though he had been shot, the would was a superficial one and just under the skin about three inches in length. There were two holes in his side just under the skin, apparently denoting the entrance and exit of the bullet. The doctors testified that the defendant was suffering no pain from the superficial wound and the only medical attention that was furnished was swabbing out of the wound and placing some mercurochrome on it, as well as giving the defendant an injection of penicillin. They further testified that this penicillin would not dull his mental processes. This statement was written out and signed on each page by this defendant while he was at Baton Rouge Hospital. Shortly thereafter, the two officers took the defendant to Baton Rouge Police Headquarters where they met Deputy Jenkins and Deputy Parker from St. Tammany Parish, and in the presence of all of the officers, the defendant wrote out an additional statement wherein he stated he had read the statement consisting of four (4) pages and it was true except for one thing he left out and that was that he took two dollars and some change off the one closest to his house. (By “the one” meaning, of course, one of the officers he had killed.) When this additional statement was written on the statement by the- defendant, all the officers, Ballard, Hewitt, Jenkins and Parker testified that no force was used on the defendant, nor did they make any promises to him, and he willingly talked and told them about the whole matter. As the record reflects, all this testimony was taken out of the presence of the Jury and at the conclusion of the State’s
 
 *1107
 
 part of the case to show the confession was free and voluntary, the defendant was granted an opportunity but did not offer any testimony in rebuttal. Consequently, I ruled that the written confession was freely and voluntarily given by this defendant. On Monday, July 14, 1958, Sheriff Andrew L. Erwin, District Attorney Burns and Mr. Gaston Laneaux went to Parish Prison in New Orleans, where the defendant was incarcerated. He was brought to the office of the Criminal Sheriff of the Parish of Orleans, where he was questioned by the District Attorney and the Sheriff, and according to the testimony of the Sheriff and the District Attorney, as well as Mr. Laneaux he recited his participation in the homicides in minute detail. The testimony of all three of them shows that the defendant was not threatened or intimidated, nor was he promised any immunity in any form whatsoever in connection with his giving said statement. None of the statement of this defendant was taken down by either of the witnesses, but their testimony reflects that what the defendant told them was substantially the same and I believe that the law was satisfied that the substance of the statement made by the defendant was given by them, even though they could not quote it verbatim. The defendant didn’t deny any of the circumstances surrounding the giving of this oral statement, nor did he deny giving such statement to the three witnesses. Consequently, I ruled that the oral statement was freely and voluntarily made.”
 

 With respect to the objection that the defendant was in extreme pain and not in full control of his mental faculties when he made his written confession, the trial judge in his per curiam says:
 

 “ * * * This is contrary to the testimony of both Doctors Byrd and Williams, who had the defendant under observation at Baton Rouge Hospital for about an hour, during which time he gave the written statement. Both of them testified that he appeared to be perfectly normal and was suffering very little, if any, pain. I further note that even though counsel for defendant stated that he could present evidence to the effect that defendant did not know what he was doing, he did not at any time produce said evidence and I gave him ample opportunity. * *
 
 *»
 

 The foregoing statements made by the trial judge are all borne out by the record and his rulings were correct.
 

 The third ground of objection leveled at the admissibility of the oral confession, that it was not reduced to writing and that it was not repeated verbatim by
 
 *1109
 
 the witnesses who heard it, is likewise without merit. We have already pointed out in our discussion of Bill No. 2 that there is no law which requires the reduction to writing of an oral confession or inculpatory statement made by a defendant. In his per curiam the trial judge points out that while no notes were made by the witnesses to the oral statement “All of them testified that they were giving the substance of the confession, or statement, and could not .repeat it verbatim. * * ”
 

 It is well settled that oral confessions or admissions need not be repeated verbatim. It suffices that they be given in their entirety and substance. State v. Davis, 237 La. 577, 111 So.2d 778. This is sufficient to meet the requirements of LSA-R.S. 15:450
 
 [4]
 
 State v. Domino, 234 La. 950, 102 So.2d 227.
 

 The trial judge made no error in admitting in evidence the written and oral confessions and statements.
 

 Bill of Exception No. 11 was taken to a statement made to the jury by the district attorney in his closing argument on behalf of the State. Defendant objected and requested the Court to grant a mistrial, which was refused whereupon defendant reserved a bill of exception.
 

 Defendant contends that the statement made by the District Attorney was “Gene Dyson’s testimony was not denied by the
 
 defendant
 
 or anyone else” and that this constituted a comment on the failure of the defendant to take the stand. The state contends that the statement made was “Gene Dyson’s testimony was not denied by the
 
 defense
 
 or anyone else.” (Italics ours.)
 

 In his per curiam the trial judge says-: “I was of the opinion that the District Attorney had stated that ‘Gene Dyson’s testimony was not denied by the defense or anyone else’, but due to the fact that Court was being held in the gymnasium of the Grammar School of the Town of Covington while the new Courthouse was being built and the acoustics of said room being very bad, together with the District Attorney’s back being toward me at the time that the statement was made. I was not absolutely sure. * * * I was not absolutely certain what the District Attorney had said, but was reasonably sure he had said ‘defense’. I was preparing to rule on the matter when counsel for defendant suggested to me that since there was such a difference of opinion as to what statement the District Attorney had made that I should ask the Jury what term they had understood the District Attorney to have
 
 *1111
 
 employed — ‘defendant’ or ‘defense’. In compliance with his request, I polled the Jury on the matter and each and every member of the Jury stated to me they understood the District Attorney had used the term ‘defense’. * * * I might further add that in the body of this bill, it is pointed out that one of the members of the Jury, no one is sure which one, stated ‘We know the defendant didn’t take the stand anyway.’ ”
 

 No stenographic record was being made of the district attorney’s closing argument. In view of the controversy over what was said the stenographer recorded both versions but as pointed out by the trial judge in his per curiam and concurred in by defense counsel before sentence, the district attorney used either the word “defense” or the word “defendant”, and not both words.
 

 Defense counsel was the sole person who understood the district attorney to use the word “defendant”. All twelve jurors who were polled on the motion by defense counsel unanimously agreed that the word used was “defense” and this version was concurred in by the district attorney and the trial judge. Accordingly, we must of necessity hold that the word “defense” was used.
 

 The trial judge in his per curiam points out and the state concedes, that if the district attorney stated that the testimony of a state witness was not denied by
 
 defendant
 
 or anyone else this would constitute reversible error and the defendant would be entitled to a mistrial. State v. Sinigal, 138 La. 469, 70 So. 478.
 

 In State v. Stahl, 236 La. 362, 107 So.2d 670, 672 we said:
 

 “Under the well-settled jurisprudence of this court, it is reversible error for the district attorney to call to the attention of the jury, either by direct statement or by plain inference, the fact that the defendant has not testified. See State v. Antoine, 189 La. 619, 180 So. 465; State v. Bentley, 219 La. 893, 54 So.2d 137, and numerous authorities there cited. And where such a comment is made, the verdict of the jury will be set aside even though the judge instructs the jury to dismiss the comment from their minds and not to permit themselves to be influenced by it. State v. Richardson, 175 La. 823, 144 So. 587.”
 

 On the other hand comment by the district attorney that no witness for the defense has denied the state’s evidence does not amount to a comment on defendant’s failure to take the stand. State v. Dallao et al., 187 La. 392, 175 So. 4; State v. Varnado, 126 La. 732, 52 So. 1006; State v. Robertson, 133 La. 806, 63 So. 363; State v. Connor, 142 La. 631, 77 So. 482; State v. Lewis, 156 La. 985, 101 So. 386; State v. Glauson, 165 La. 270, 115 So. 484. In State v. Antoine, 189 La. 619, 180 So.
 
 *1113
 
 465, 466 we held that a remark of the assistant district attorney “How has the defense combatted or met the case of the State?” was not objectionable as an indirect comment on defendant’s failure to testify.
 

 In his brief in this Court counsel for defendant places great reliance on the case of State v. Hoover, 219 La. 872, 54 So.2d 130. The facts in that case are totally dissimilar to those in the case at bar. In the Hoover case the assistant district attorney called attention to the manner in which defendant had discussed with his counsel certain photographs of the scene of the crime and the district attorney argued that from the manner in which defendant observed these particular photographs he was familiar with the actual scene of the crime rather than the photographs themselves. Tn the Hoover case the district attorney’s comment referred to the defendant himself and not to the defense generally as in this case. Furthermore as pointed out in State v. Stahl, supra, the ruling on this particular point in the Hoover case represented the views of three Justices only. The language used by the district attorney in the instant case is not comparable to the language used in the Hoover case and that case, even if it is considered authority, is not applicable here.
 

 Counsel for defendant contends that the statement of one of the jurors “We know the defendant didn’t take the stand anyway” reflects that what the district attorney had said caused the jurors to become conscious of the fact that the defendant did not take the stand. In connection with that contention the trial judge in his per curiam says:
 

 “ * * * I think it was not what the District Attorney said but what counsel for defendant said that caused the Juror to become conscious of the fact that the defendant didn’t take the stand because the attorney for defendant must have stated at least four or five times that the statement made by the District Attorney was a comment on the defendant’s failure to take the stand. * * * ”
 

 Where the defendant’s failure to take the stand is called to the jury’s attention by defense counsel there is no ground for a mistrial. State v. Connor, supra.
 

 Counsel for defendant finally argues:
 

 “The testimony of Gene Dyson was based on an alleged conversation between himself and the defendant. There were only two people present, Dyson and the defendant, and the only one who could possibly contradict the statement of Gene Dyson would be the defendant himself. Therefore, whether the District Attorney stated that ‘Gene Dyson’s testimony was not denied by the defendant or anyone else’ or whether the district attorney stated
 
 *1115
 
 that ‘Gene Dyson’s testimony was not denied by the defense or anyone else,’ the implication that the defendant failed to testify was directed to the attention of the jury.”
 

 Dyson, who is married to the defendant’s sister, testified that the defendant on March 8th brought a gun and some shells to his house and that he likewise left some clothes at Dyson’s house during the time defendant was separated from his “common-law wife”. He testified further that during the early morning of July 12th defendant came to his home, asked him to open the door and inquired as to the whereabouts of the gun and the shells. Dyson told the defendant that the gun was in the back room and the shells in the armour in the next room. Dyson testified that defendant got the gun and some shells and when he asked defendant what he was going to do with the gun he said "kill Gus Gill. He has messed with me one time too many.” Dyson further testified that defendant was mad and excited and that he slammed the door as he left. Later, after Dyson heard of the shooting, he reported what he knew to the District Attorney or the Sheriff. This testimony was not contradicted by any of the defense witnesses, and whether it could be contradicted by anyone other than defendant is immaterial.
 

 In State v. Glauson, supra, counsel for the state made the remark [165 La. 270, 115 So. 487]: “I say again, gentlemen, that there hasn’t been a word from any witness of the defendants, that there has not been a word of denial in this matter.” This Court in passing upon this point said :
 

 “The court, in its per curiam, says that the remark was leveled at the failure of defendants’ witnesses to deny a material fact under discussion. The defense placed no witnesses on the stand, and the defendants did not avail themselves of the privilege of taking the witness stand in their own behalves. It is the contention of defendants that the state, by the foregoing remark, commented in contravention of law upon their failure to take the stand. * * * However, the rule prohibiting such reference has never been extended so far as to prohibit the state in discussing the evidence, in its argument before the jury, from mentioning the failure of the defense to offer evidence to show the nonexistence of any asserted fact or facts under discussion, whether this failure results from that of the defense to question such witnesses as it may have placed on the stand, regarding the existence of the asserted fact or facts, or from the failure of the defendant to testify or to place witnesses on the stand. * * * ”
 

 The language used by the district attorney in this case is no different, in effect, than that used in State v. Bentley, supra, where the district attorney remarked that the
 
 *1117
 
 state’s “evidence is uncontradicted and uncontroverted.” [219 La. 893, 54 So.2d 128.]
 

 Bill of Exception No. 11 is without merit.
 

 Bills of Exception Nos. 12, 13, 15, 18, 19, 25 and 28 were taken to the refusal of the trial judge to give certain special charges. These charges relate to the rules of law applicable to self-defense, the privilege granted to defendant to testify in his own behalf and the rules governing his failure to testify, the credibility of the witnesses, the effect of the indictment, the presumption of innocence, reasonable doubt, and direct and circumstantial evidence. These charges were refused by the trial judge because the subject matter thereof was covered by the general charge. We have reviewed the special charges and the general charge and find that the trial judge is correct. In fact, some of the same subject matter was additionally covered in the special charges that were given. Counsel for defendant has not pointed out to us either in brief or in oral argument any error in the trial judge’s rulings in this respect, and no good purpose would be served by detailing the special and general charges here.
 

 The trial judge is not required to give a special charge where the matter contained in such charge has already been given in the general charge. LSA-R.S. 15:390.
 

 These bills therefore are without merit.
 

 Bill of Exception No. 14 was taken to the refusal to give special charge No. 8 which has to do with the reasonable belief of the defendant of imminent danger because of “the character of the deceased for a violent, quarrelsome, dangerous and turbulent disposition, notorious in the community and known to accused.” The trial judge correctly ruled that there was not one scintilla of evidence in the record that the deceased had ever threatened the accused or that the deceased was of a violent, quarrelsome or dangerous nature, and hence there was no justification for this special charge.
 

 Bill of Exception No. 16 was taken to the refusal to give special charge No. 13 which deals with the good character and reputation for peace and quiet of the accused. The judge correctly ruled that he could not give this charge as there was no evidence whatsoever introduced as to the good character and reputation for peace and quiet of the accused.
 

 Bill of Exception No. 17 was taken to the refusal to give special charge No. 14. As correctly stated by the trial judge in his per curiam:
 

 “This charge has to do with justifiable excuse for homicide on the grounds of self defense, where the deceased had previously threatened to kill the accused
 
 *1119
 
 or to do him great bodily harm, and these acts had created reasonable belief that he had intended to carry his threats into execution and when they met, defendant believed that killing was necessary for protection, then this would constitute a justifiable excuse for the killing. There is absoulutely no evidence whatsoever that the deceased threatened to kill the accused or do him great bodily harm, much less to attempt to carry the threats into execution. At any rate, I covered the law of justifiable self defense in the general charge, which is in writing in the record, and for that reason I refused to give special charge No. 14.”
 

 This ruling is correct.
 

 Bills of Exception Nos. 20, 21 and 22 were taken to the refusal of the trial judge to give special charges defining armed robbery and charging the jury that if they found from the evidence that taking anything of value from the person of the deceased was an afterthought to the killing they should find the defendant not guilty. The trial judge was correct in refusing this charge. In his per curiam the trial judge pointed out:
 

 “ * * * While there is nothing wrong with the definition of armed robbery, in special charge #21 and this is covered in the general charge, yet in the last few lines of this charge, I was requested to charge the Jury that if the defendant was not actually in the course of robbery prior to the killing, but that robbery was the afterthought of the killing, then the Jury should find the defendant ‘not guilty’. Of course, as heretofore pointed out in treatment of Bill of Exception #1, this defendant was being tried under both sections of R.S. 14:30, in (1) that the offense was committed while the defendant had specific intent to kill or inflict great bodily harm and (2) that during the course of the commission of the offense, the defendant was engaged in the perpetration of armed robbery. While it is true the District Attorney filed an answer to the Bill of Particulars and stated that he was trying the defendant under both sections of the statute, yet if the Jury believed the defendant was guilty under section (1) of said statute, then the Jury could find the defendant guilty whether or not they believed he was guilty under subsection (2) of said statute. For this reason, I refused to give the special charge that the Jury would have to find the defendant ‘not guilty’, if they didn’t find that he was engaged in the perpetration of the crime of armed robbery at the time of the killing. I did however, charge the Jury fully on the crime of armed robbery, which is reflected by the general charge and is in the record.”
 

 
 *1121
 
 Bill of Exception No. 23 was taken to the refusal of the trial judge to give special charge No. 24. In this special charge the judge was requested to charge the jury that the defendant was being charged under both sections of LSA-R.S. 14:30 as shown by the bill of particulars and the judge was requested to charge the jury: “That the defendant cannot be held to answer to the indictment on both counts and that the District Attorney should elect to proceed under one count or the other” and further that “the two counts are conflicting”. As pointed out by the trial judge in his per curiam, this argument is fully answered in the discussion of Bill of Exception No. 1 and the case of State v. Rowan, supra. Further the trial judge correctly held that the two counts are not conflicting. There is no merit in this bill.
 

 Bill of Exception No. 24 was reserved to the refusal of the trial judge to give special charge No. 25 which, after setting out the answer of the district attorney to the bill of particulars, reads as follows:
 

 “Insofar as the rights of the State and defendant are concerned, the State is bound by its answer, and for the purposes of your consideration of the charge against the defendant, the Bill of Particulars technically becomes a part of the indictment, and if the State should fail to prove the allegations as set forth in the answer to the Bill of Particulars, then I charge you that it is your duty to find the defendant not guilty.”
 

 The trial judge correctly stated:
 

 “I refused to give this charge for the reason that if the Jury believed the defendant was guilty under either subsection of the statute, the mere fact that the District Attorney furnished a Bill of Particulars stating that the defendant committed murder under both subsections would not prevent the Jury from finding the defendant guilty under either one of the subsections. The Bill of Particulars cannot alter the law. Accordingly, I refused to give special charge #25.”
 

 Bill of Exception No. 26 was taken to the refusal of the trial judge to give the following special charge:
 

 “Special Charge No. 29
 

 “Reasonable Doubt and Presumption of Innocence.
 

 “Before you can convict either one of the accused in the crime of , you must be satisfied of his or her guilt beyond a reasonable doubt, and if you are not so satisfied they are entitled to an acquittal. * * * ” This special charge further generally deals with reasonable doubt, presumption of innocence and the onus or burden of proving every essential element of the crime.
 

 
 *1123
 
 According to the per curiam the trial judge refused to give this charge for the following reasons: (1) There is a blank in reference to the crime and the crime is not designated; (2) this charge denotes that there are two defendants whereas there is only one defendant which might confuse the jury; (3) all of the applicable law has been set out in the general charge.
 

 There is no merit to this bill.
 

 Bill of Exception No. 27 was taken to the refusal to give special charge No. 30. This special charge has to do with uncommunicated threats on the part of the deceased, as well as threats on the part of the deceased to kill the accused. There was no evidence of these threats in the record and the trial judge was correct in refusing to give this special charge.
 

 Bill of Exception No. 29 was taken to the refusal to give special charge No. 32. This charge deals with the defense of insanity at the time of the commission of the offense and the trial judge was asked to instruct the jury to apply the “irresistible impulse” test of insanity. Louisiana applies the “right and wrong” test in such cases. LSA-R.S. 14.14.
 
 [5]
 
 In disposing of a similar contention in State v. Jenkins, 236 La. 256, 107 So.2d 632, 637, we said: “Defense counsel’s further contention that the law of Louisiana is outmoded and archaic and should be changed in accordance with the test of legal insanity prevailing in some other jurisdictions is beyond the scope of this appeal and presents a matter that should be addressed to the legislature.” The ruling of the trial judge is correct.
 

 Bill of Exception No. 30 was taken to the overruling of the motion in arrest of judgment. In this motion defendant re-urged his objections to the bill of particulars, his motion to elect and his prayer for oyer and objections to the admissibility of the oral confession. All of these contentions have been answered in our discussion of Bills No. 1 and No. 2. Bill No. 30 is without merit
 

 Bill of Exception No. 31 was reserved when the judge overruled the motion for a new trial. This bill in part raises the same contentions as Bill No. 30 and in those respects for the same reasons is without merit. It is further set forth in the motion for a new trial that the verdict was not based on any legal evidence. This Court, of course, is without authority to pass on the sufficiency or the weight of the evidence. Art. 19, Sec. 9, Louisiana Constitution of 1921, LSA; LSA-R.S. 15:384;
 
 *1125
 
 State v. Turner, 228 La. 202, 81 So.2d 861. It is only where there is no evidence that this Court can consider the complaint. State v. Brown, 224 La. 480, 70 So.2d 96.
 

 The record in this case is replete with legal evidence that the defendant, incensed at Police Officer Gill, because he broke up a disturbance between defendant and his common-law wife, proceeded to get his shotgun and hiding in ambush near his home killed Gill and another police officer, stole their car and their guns, fled first to New Orleans where he left his shotgun, then to Sorrento where he abandoned the car and finally to Baton Rouge where he was apprehended while still in possession of the guns belonging to the deceased police officers. There was therefore evidence in the record upon which the jury could base its verdict.
 

 For the reasons assigned, the conviction and sentence are affirmed.
 

 HAMITER, J., concurs in the decree.
 

 [1]
 

 . LSA-R.S. 14:30 provides:
 

 “Murder is the killing of a human being, “(1) When the offender has a specific intent to kill or to inflict great bodily-harm; or
 

 “(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated arson, aggravated burglary, aggravated kidnapping, aggravated rape, armed robbery, or simple robbery, even though he has no intent to kill.
 

 “Whoever commits the crime of murder shall be punished by death.”
 

 [2]
 

 . The indictment charges:
 

 “That one, Moreese Bickman, late of the Parish of St. Tammany, on the 12th day of July, in the year of our Lord, one thousand
 
 nine
 
 hundred and fifty-eight, in the Parish of St. Tammany, aforesaid, and within the jurisdiction of the Twenty-Second Judicial District Court of Louisiana, for the Parish of St. Tammany: “murdered Gus Gill.
 

 contrary to the form of the Statutes of the State of Louisiana in such cases made and provided, and against the peace and dignity of the same.”
 

 [3]
 

 . See also footnote 15 in State v. Faciane, 233 La. 1028, 1055, 99 So.2d 333.
 

 [4]
 

 . LSA-R.S. 15:450 provides: “Every confession, admission or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford.”
 

 [5]
 

 . LSA-R.S. 14:14 provides: “If the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility.”