395 So.2d 700 (1981)
STATE of Louisiana
v.
James Allen LEE.
No. 80-KA-1695.
Supreme Court of Louisiana.
March 2, 1981.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul Carmouche, Dist. Atty., Dale G. Cox, Tommy J. Johnson, Asst. Dist. Attys., for plaintiff-appellee.
Daryl Gold, Simms & Gold, Leesville, James R. Dawson, Johnston, Thornton,
*701 Dawson & Hunter, Shreveport, for defendant-appellant.
WATKINS, Associate Justice Ad Hoc.[*]
On July 15, 1977, defendant James Allen Lee was indicted by a Caddo Parish Grand Jury for the offense of First Degree Murder, a violation of LSA-R.S. 14:30. A twelve person jury found the defendant guilty as charged on June 29, 1979. The trial court sentenced the defendant to life imprisonment without benefit of parole, probation, or suspension of sentence in accordance with the recommendation of the jury. On appeal the defendant urges three arguments as grounds for reversal of his conviction and sentence.
FACTS
The facts incident to the murder are not at issue. The defendant was convicted of shooting Jerry Dennis, the owner of the Shady Oaks Cafe, following an altercation over missing car keys. The defendant turned himself in to police several hours later. Following his arrest and indictment the defendant entered a plea of not guilty and not guilty by reason of insanity. The record reveals that a sanity commission was appointed and the defendant was ruled competent to stand trial on October 31, 1977. Three days into trial, however, defense counsel moved that the defendant be re-examined for mental capacity and the trial judge declared a mistrial on the grounds that the defendant was incapable of assisting his attorney in his defense due to a mental disease or defect. Defendant was then committed to East Louisiana State Hospital in Jackson. In March of 1979 the District Court issued an order for the defendant's return and following re-evaluation by a sanity commission, the defendant was deemed capable of standing trial. During trial, the defendant persistently interrupted the proceedings by pseudo-Biblical rhetoric and singing the Star Spangled Banner. After numerous warnings by the trial judge, defendant Lee was removed to an adjoining room where he could hear the trial proceedings. After continued outbursts and interruptions from the next room, the defendant was bound and gagged. The jury rejected defendant's plea of insanity and found him guilty of First Degree Murder, recommending that the defendant be sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The defendant urges the following three (3) arguments as grounds for reversal of his conviction and sentence.
ARGUMENT NO. I
(Assignments of Error Nos. 5, 6, 8, and 26)
By these assignments the defendant urges that the trial court erred in removing the defendant from the courtroom during trial, in overruling defense counsel's objection regarding an alleged inability to communicate effectively with his client, and in having the defendant handcuffed, shackled and gagged. The defendant argues that these measures effectively deprived him of the right to be present during trial, and to confront the witnesses against him.
As stated above, the selection of prospective jurors as well as the trial proceedings were repeatedly interrupted by defendant's disruptive behavior. He began by singing the Star Spangled Banner in front of the prospective jurors. Despite a reprimand and warning from the judge the defendant continued by reciting scripture. The judge initially ordered the defendant removed from the courtroom, but reconsidered and warned both defendant and counsel that he would give defendant Lee another chance but remove him if the behavior continued. After additional outbursts and warnings the defendant was ordered removed to an adjoining room, with the understanding that he would be allowed to return once he agreed to act in an acceptable manner. Arrangements were made for the proceedings to be piped into the adjoining room and an attorney was appointed to sit with the defendant. Jury selection continued and the *702 defendant again began singing the National Anthem, and speaking in a ministerial fashion. Though these outbursts were in the adjoining room, they were loud enough to disrupt proceedings in the courtroom. The defendant at this point had been handcuffed and shackled following an altercation with deputies. The trial judge stated that he had no alternative but to consider gagging the defendant. After some discussion, however, the judge proceeded without having defendant Lee gagged. At some point the defendant was returned to the courtroom only to interrupt the proceedings again by singing the National Anthem. Again the judge warned him that he would be removed and gagged unless he controlled himself. The defendant's disruptive behavior continued throughout the proceedings, and included a prolonged interruption of the state's closing argument. In light of the innumerable interruptions at all stages of the court proceedings it appears that the defendant's arguments objecting to the measures taken by the court are without merit.
In Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) the United States Supreme Court held that "a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." 90 S.Ct. at 1060. The court went on to state three permissible ways of dealing with an obstreperous defendant: (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly.
The defendant was given every opportunity to remain in the courtroom without restraint if he conducted himself properly. The handcuffs and shackles were utilized only after the defendant struggled with deputies. The judge saw further outbursts as a security risk and only then allowed the restraints. Considering the incessant outbursts it appears the judge acted with considerable restraint. When the defendant was held in an adjoining room he was able to hear the trial proceedings and was accompanied by a second attorney to relay any messages to lead counsel in the courtroom. This Court has stated that: "We recognize that the use of restraining devices, including manacles, is within the sound discretion of the trial judge. In the absence of a clear showing of abuse of discretion on the part of the trial judge, a conviction will not be disturbed on appeal because of restraint imposed upon defendant." State v. Burnett, 337 So.2d 1096 at 1099 (La.1976). There was no such abuse of discretion here.
We find these assignments to be without merit.
ARGUMENT NO. II
(Assignments of Error Nos. 10 and 28)
By these assignments the defendant urges that the trial court erred in instructing the jury that the defendant was presumed sane and to possess a sufficient degree of reason to be responsible for his acts and further in allowing the prosecutor to argue this in his opening and closing statements. More generally, the defendant argues that the presumption of sanity utilized in our criminal system is constitutionally defective.
Under the Louisiana statutory scheme governing insanity in criminal cases, a defendant is exempt from criminal responsibility "if the circumstances indicate that because of a mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question..." LSA-R.S. 14:14. However, LSA-R.S. 15:432 establishes a legal presumption that the defendant is sane and responsible for his actions. This statute also provides that the effect of this presumption is to relieve the state of the necessity of any proof of defendant's sanity, but that the presumption of sanity may be destroyed by rebutting evidence on the part of the defendant. Under LSA-C.Cr.P. art. 652, insanity is an affirmative defense *703 which the defendant must prove by a preponderance of the evidence. See also State v. Willie, 360 So.2d 813 (La.1978); State v. Watkins, 340 So.2d 235 (La.1976); State v. Craig, 340 So.2d 191 (La.1976).
The defendant urges that this scheme creates an impermissible presumption which improperly invades the province of the fact finder and relieves the state of the burden of proving an essential element of the offense of First Degree Murder.
The judge gave the following instructions to the jury on the presumption of sanity:
"In this case there is a plea of not guilty by reason of insanity at the time of committing the act. Every person is presumed to be sane and possess a sufficient degree of reason to be responsible for his or her acts. Therefore, while the State, in making its case, must establish the guilt of the accused beyond a reasonable doubt, when insanity is set up as a defense, it must be established by the defendant to the satisfaction of the jury. In order to overcome the presumption of sanity and relieve the defendant from legal responsibility when he relies upon his insanity as an excuse for a criminal act, he must establish such insanity to the satisfaction of the Jury by a preponderance of evidence. A preponderance of evidence does not mean a preponderance of witnesses, but it means that, taking all the evidence into consideration, the weight and effect of it is to satisfy your mind that at the time of the commission of the act the defendant was insane. It is for you and you alone to pass judgment upon this plea of insanity. You are the sole judges of how much weight you will give the expert testimony, the non-expert testimony and any documentary evidence, together with all facts brought out on the trial of the case. In other words, a plea of insanity presents a question of fact to be decided by you as any other fact in the case."
Defendant contends that the requirement that insanity at the time of the offense be proved by the defendant by a preponderance of the evidence, as was the basis on which the trial court conducted its proceedings and charged the jury, constitutes a denial of due process, particularly if the offense charged is one in which intent is an element of the crime, as is the case with murder. The argument that placing the burden on defendant to prove insanity at the time of the offense of murder places an unconstitutional burden on defendant which is violative of Fourteenth Amendment due process rights was raised, and rejected, in State v. Willie, supra. See also State v. Poree, 386 So.2d 1331 (La.1980). We noted that the United States Supreme Court had held that it was not an unconstitutional denial of due process to place the burden on defendant to prove insanity as an affirmative defense. See Patterson v. New York, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).
Defendant argues that in light of recent decisions of the United States Supreme Court in Ulster County Court v. Allen, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979) and Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), we should reconsider the constitutional validity or the presumption of sanity. We consider Patterson v. New York, supra, to be the latest definitive holding by the United States Supreme Court on the presumption of sanity and thus is controlling. Although certain language in Sandstrom and Allen could be taken to require a contrary result, we are unwilling to decide in a manner contrary to Patterson absent a clear holding of the United States Supreme Court overruling it.
We, therefore, hold that it is not a denial of due process to provide in this state's statutory law that insanity shall be an affirmative defense, LSA-C.Cr.P. art. 652, nor is the application of that provision a denial of due process under the Louisiana Constitution or the United States Constitution.
In this case, only one psychiatrist was called to testify on trial on the merits, Dr. W. A. McBride, and he testified for the prosecution. Defendant introduced no evidence *704 that would tend to establish his insanity at the time the offense was committed other than his own testimony, in which he spoke in Elizabethan English of a rather Biblical style, sang the Star-Spangled Banner, and generally ranted. As we are aware that defendant may have been putting on an act to procure his acquittal on grounds on insanity, we cannot hold that his obstreperous conduct and testimony, without supporting psychiatric or other testimony of insanity at the time of the commission of the offense[1] meets the burden which we hold is imposed on defendant. If we were to find that defendant had proved the affirmative defense of insanity by a preponderance of the evidence, we would reverse. See State v. Roy, 395 So.2d 664 (1981). As we find that defendant has not proved insanity by a preponderance of the evidence, we deem it improper to set aside the verdict of guilty on the ground that defendant was insane when the offense was committed.
ARGUMENT NO. III
(Assignments of Error Nos. 28 and 29)
By these assignments the defendant urges that the trial court erred in giving erroneous instructions and definitions of insanity to the jury. More particularly the defendant challenges the test used to determine a defendant's criminal responsibility for his actions, urging that it is too simplistic and unrealistic for the complexities of modern life.
LSA-R.S. 14:14 sets forth the test of insanity at the time the commission of the offense as follows:
"If the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility."
This statute is an adoption of the McNaughten rule which has its base in an English case decided in 1843 and has been challenged in the more recent past as being unrealistic and oversimplistic. However this Court has rejected these arguments. As stated in the case of State v. Andrews, 369 So.2d 1049 (La.1979):
"This Court is not unaware that the McNaughten test has long been under attack, but our legislature has by R.S. 14:14 expressly adopted the McNaughten test of insanity; whether wise or unwise, this legislative choice does not admit of judicial substitution of another test. State v. Berry, 324 So.2d at 825 (La. 19[76]). Any modification or liberalization of our test of insanity in R.S. 14:14 must start with the legislature." See also, State v. Weber, 364 So.2d 952 (La. 1978); State v. Berry, 324 So.2d 822 (La. 1976); State v. Plaisance, [252 La. 212] 210 So.2d 323 (La.1968); State v. Bickham, [239 La. 1094] 121 So.2d 207 (La. 1960); State v. Jenkins, [236 La. 256] 107 So.2d 632 (La.1958).
We find these assignments to be without merit.
The conviction and sentence are therefore affirmed.
AFFIRMED.
NOTES
[*] Judges Ellis, Cole and Watkins of the Court of Appeal, First Circuit, participated in this decision as Associate Justices Ad Hoc, joined by Chief Justice Dixon and Associate Justices Marcus, Watson, and Lemmon.
[1] Dr. McBride admitted he was uncertain of defendant's mental condition at that time, as he first saw him considerably later.